TERRY PAUL MITCHEM

*v.*

G. KEMP MELTON, *etc.*

(No. 15136)

Decided May 12, 1981.

*John Paul Kemp, Marshall & St. Clair and James W. St. Clair* for appellant.

*Jack Kessler*, Assistant Prosecuting Attorney, for appellee.

MILLER, JUSTICE:

The principal issue on this appeal is the trial court's ruling that precluded the appellant from proceeding as a class action under Rule 23 of the West Virginia Rules of Civil Procedure. A collateral question is whether an order denying class status under Rule 23 is an appealable order.

The basis for the trial court's rejection of the class status was that it conceived the appellant's suit as a writ of habeas corpus. The court reasoned that since Rule 81(a) (5)[1] excludes writs of habeas corpus from the ambit of the Rules of Civil Procedure, except as to Rules 5(b), 5(e) and 80, which are not material to the issue here, there was no right to have a habeas corpus class action. In order to determine this issue, we must review the appellant's complaint and particularly the relief sought to determine if it is a writ of habeas corpus or, as the appellant contends, if it is a civil rights action under 42 U.S.C.A. §1983.

From the record, there is little doubt that the appellant's original *pro se* petition filed in this Court was styled as a writ of habeas corpus. It alleged in considerable factual detail a number of charges concerning the physical and living conditions of the Kanawha County Jail. We granted the writ, made it returnable to the Circuit Court of

---

[1] Rule 81(a)(5), West Virginia Rules of Civil Procedure, provides:
"Extraordinary Remedies. Rules 5(b), 5(e) and 80 apply, but the other rules do not apply, to proceedings under the writs of mandamus, prohibition, certiorari, habeas corpus, and quo warranto, and upon an information in the nature of a quo warranto."

Kanawha County and appointed counsel to represent the appellant.[2]

After his appointment counsel obtained leave to file an amended pleading which was filed on January 23, 1980, and was styled "Civil Action No. _____, Amended Petition for Habeas Corpus and Other Relief." In paragraph II allegations were made "[t]hat this action is properly brought as a class action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure," and proceeded to list some six reasons why a class action was necessary. In paragraph VI, after asserting generally that the conditions of the Kanawha County Jail violated various enumerated provisions of the West Virginia and Federal Constitutions, there were listed some 24 specific charges of unlawful conditions.

The amended complaint concluded with a prayer for injunctive relief, to prohibit the continuation of the improper conditions, and for affirmative relief designed to correct the conditions. The appellant also requested in his prayer that the appellees supply the court with a plan to correct the conditions and, if they failed to take corrective action, for the court to appoint a receiver to manage the affairs of the jail.

After the amended complaint was filed the appellant also filed a set of Interrogatories and Request for Admissions. None of these discovery techniques was answered by the appellees.

In *Rhodes v. Leverette*, 160 W. Va. 781, 239 S.E.2d 136, 140-41 (1977), we discussed in some detail the type of relief available in a habeas corpus proceeding and noted that:

> "The United States Supreme Court has made it clear that the writ of habeas corpus, because of its broad availability to challenge confinement contrary to the Constitution, cannot be limited to a particular form of remedial relief. *Preiser v.*

---

[2] While the order awarding the writ treated it as proceeding under W. Va. Code, 53-4A-1, *et seq.*, it appears the appellant was not actually seeking to attack his conviction but was using habeas corpus to challenge the conditions of his confinement.

*Rodriguez,* [411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)]; *Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)."

From a federal standpoint, *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), made the following statement on the difference between a habeas corpus proceeding and a federal civil rights suit under 42 U.S.C.A. §1983 challenging prison conditions:

> "[A] §1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." 411 U.S. at 499, 36 L.Ed.2d at 455, 93 S.Ct. at 1841.

In *Preiser,* a §1983 action was filed by state prison inmates to challenge the constitutionality of disciplinary action, taken against them by prison officials, which had deprived them of their good conduct time credits. The Supreme Court held that a §1983 action could not be maintained because a writ of habeas corpus proceeding was the appropriate remedy when attacking the length of their confinements. The Court in *Preiser* specifically stated: "But we need not in this case explore the appropriate limits of habeas corpus as an alternate remedy to a proper action under §1983." 411 U.S. at 500, 36 L.Ed.2d at 456, 93 S.Ct. at 1841. Thus, *Preiser* may be viewed as establishing that ordinarily a §1983 action is appropriate where complaint is made to the conditions of confinement and not its duration.

The distinction, however, between the conditions of confinement and its length is not talismanic.[3] We have

---

[3] In *Bell v. Wolfish,* 441 U.S. 520, 60 L.Ed.2d 447, 99 S.Ct. 1861 (1979), where pretrial detainees at a federally-operated jail brought a habeas corpus class action challenging certain conditions in the jail, the Court stated in Note 6:

"Petitioners apparently never contested the propriety of respondents' use of a writ of habeas corpus to challenge the conditions of their confinement, and petitioners do not raise that question in this Court. ... Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact

entertained writs of habeas corpus where prison inmates were claiming that the conditions of their confinement amounted to cruel and unusual punishment. *E.g., Harrah v. Leverette*, 165 W. Va. 665, 271 S.E.2d 322 (1980); *State ex rel. K.W. v. Werner*, 161 W. Va. 192, 242 S.E.2d 907 (1978); *State ex rel. Pingley v. Coiner*, 155 W. Va. 591, 186 S.E.2d 220 (1972). In *Harrah* we also recognized that an action based on 42 U.S.C.A. §1983 can be maintained in our State courts to challenge prison conditions:

> "It is also clear that 42 U.S.C. § 1983 actions may be pursued in our state courts. *See, Terry v. Kolski*, 78 Wis.2d 475, 254 N.W.2d 704 (1977); *Kish v. Wright*, Utah, 562 P.2d 625 (1977); *Colvin v. Bowen*, Ind. App., 399 N.E.2d 835 (1980); *Rzeznik v. Chief of Police of Southampton*, 374 Mass. 475, 373 N.E.2d 1128 (1978); *Rosacker v. Multnomah County*, 43 Or.App. 583, 603 P.2d 1216 (1979); *Ingram v. Moody*, Ala., 382 So.2d 522 (1980); *Adler v. Los Angeles Unified School Dist.*, 98 Cal.App.3d 280, 159 Cal.Rptr. 528 (1979); *Tyler v. Whitehead*, Mo.App., 583 S.W.2d 240 (1979)." 165 W. Va. at 682, 271 S.E.2d at 332.

To paraphrase *Preiser*, we need not for the purposes of this case explore the appropriate limits of habeas corpus as an alternative to an action under §1983. What is before us is a suit which does bear the hallmark of a §1983 action since it challenges the conditions of confinement and does not seek a determination that the prisoner is entitled to an immediate or quicker release from confinement. Certainly, the use by counsel for appellant of discovery techniques and class action status provided for in the Rules of Civil Procedure demonstrates an intention to utilize a §1983 action. Consequently, we hold that the trial court was in error in treating the case as a proceeding for writ of habeas corpus and therefore outside the Rules of Civil Procedure.

Other state courts have permitted a §1983 action to be utilized to challenge conditions of confinement. *E.g., Williams v. Davis*, 386 So.2d 415 (Ala. 1980); *Brown v.*

---

or length of the confinement itself. See Preiser v. Rodriquez, 411 US 475, 499-500, 36 L Ed 2d 439, 93 S Ct 1827 (1973)."

*Pitchess*, 13 Cal.3d 518, 531 P.2d 772, 119 Cal. Rptr. 204 (1975); *Wesson v. Johnson*, 195 Colo. 521, 579 P.2d 1165 (1978); *Dickerson v. Warden, Marquette Prison*, 99 Mich. App. 630, 298 N.W.2d 841 (1980); *MacNeil v. Klein*, 141 N.J. Super. 394, 358 A.2d 488 (1976); *Cooper v. Morin*, 49 N.Y.2d 69, 399 N.E.2d 1188, 424 N.Y.S.2d 168 (1979); *Commonwealth ex rel. Saunders v. Creamer*, 464 Pa. 2, 345 A.2d 702 (1975); *Terry v. Kolski*, 78 Wis.2d 475, 254 N.W.2d 704 (1977). In *Beaver v. Chaffee*, 2 Kan. App.2d 364, 579 P.2d 1217 (1978), the court recognized that habeas corpus was not the only means of testing conditions of confinement and sanctioned the use of declaratory judgment and injunctive relief.

Having established that the suit was in the nature of a §1983 action, there can be little doubt that the Rules of Civil Procedure are available for an action filed under 42 U.S.C.A. §1983. There are numerous cases in both federal and state courts where class actions under Rule 23 were brought under §1983 to change prison conditions. *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3rd Cir. 1979); *Feeley v. Sampson*, 570 F.2d 364 (1st Cir. 1978); *Zurak v. Regan*, 550 F.2d 86 (2nd Cir. 1977), *cert. denied*, 433 U.S. 914, 53 L.Ed.2d 1101, 97 S.Ct. 2988; *Wesson v. Johnson*, 195 Colo. 521, 579 P.2d 1165 (1978); *Beaver v. Chaffee*, 2 Kan. App. 364, 579 P.2d 1217 (1978); *MacNeil v. Klein*, 141 N.J. Super. 394, 358 A.2d 488 (1976); *Cooper v. Morin*, 49 N.Y.2d 69, 399 N.E.2d 1188, 424 N.Y.S.2d 168 (1979). We, therefore, conclude that the trial court was in error in holding that a class action under Rule 23 could not be utilized by the appellant in this case.

While the primary basis of the trial court's holding was that a class action was not available in a habeas corpus proceeding, it did go on to conclude that even if Rule 23 was applicable the class was drawn too broadly and, therefore, refused certification. This raises the further question as to whether the denial of class action status under Rule 23 can be appealed.[4] We initially note that the proceedings below

---

[4] Appellees argue that we should decline jurisdiction over this appeal because the underlying case can still continue even though the

became unnecessarily confused by the appellant's motion to certify the action as a class action. This was apparently based on the premise that our Rule 23 is the same as Rule 23 of the Federal Rules of Civil Procedure. We have not adopted a counterpart to Federal Rule 23(c),[5] which

appellant has been transferred out of the Kanawha County Jail. They rely on the principal that a case will not be rendered moot, even though the appellant's status changes or he loses his stake in the outcome of the litigation, if the issue is capable of repetition and yet will evade review because of the appellant's change in status. *E.g., Roe v. Wade,* 410 U.S. 113, 35 L.Ed.2d 147, 93 S.Ct. 705 (1973); cf. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). We do not address this point simply because it is irrelevant to the question of whether the appellant is entitled to proceed under §1983 and utilize a class action. A plaintiff is ordinarily entitled to maintain the theory of his case.

[5] Federal Rule 23(c) provides:

"(c) *Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.*

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

"(2) In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

"(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c) (2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

"(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass

requires the trial court to determine by order whether a suit can be maintained as a class action. Federal Rule 23(c) was adopted in 1966 and was designed to clarify some of the problems surrounding class actions, but it has ultimately reduced the availability of class action procedures. 3B Moore, *Federal Practice* §23.02-1, *et seq.*

There is no requirement for court certification of the appropriateness of a class action under our Rule 23. Nor is there any requirement in our Rule 23 as there is in Federal Rule 23(c) (4) for the use of subclasses. Despite the attempt below to consider subclasses, it is not essential to the procedural integrity of this suit.

In the past, we have indicated that whether the requisites for a class action exist rests within the sound discretion of the trial court. *Robertson v. Hatcher,* 148 W. Va. 239, 244, 135 S.E.2d 675, 679 (1964). In making any discretionary decision the trial judge cannot be arbitrary or capricious. If the requirements of Rule 23 are met then the class should be allowed. Other states recognize that the trial judge has discretion in allowing an action to proceed as a class action. *Connolly v. Frobenius,* 2 Kan. App.2d 18, 574 P.2d 971 (1978); *Grubbs v. Rine,* 39 Ohio Misc. 67, 315 N.E.2d 832 (1974); *Klemow v. Time, Inc.,* 466 Pa. 189, 352 A.2d 12 (1976), *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91; *Washington Education Association v. Shelton School District,* 93 Wash.2d 783, 613 P.2d 769 (1980).

The evolution of a class action did not begin with the Rules of Civil Procedure but had its genesis in equity practice which permitted a person holding a common interest with others to sue in his own name on behalf of himself and such others. M. Lugar & L. Silverstein, *West Virginia Rules of Civil Procedure* 193 (1960). We have in at least one instance prior to the adoption of the Rules of Civil Procedure permitted the use of prohibition to test the correctness of the trial court's finding that a class action could be maintained. *Natural Gas Company v. Sommerville,* 113 W. Va. 100, 166 S.E. 852 (1932).

---

treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

With regard to the appealability of the denial of a class action, the appellees rely on federal law which holds that the refusal to certify a class action under Federal Rule 23 is ordinarily not an appealable order. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 57 L.Ed.2d 351, 98 S.Ct. 2454 (1978). This finding of non-appealability was predicated on the necessity of a "final decision" found in the federal appellate jurisdiction statute, 28 U.S.C.A. §1291, which provides "courts of appeal shall have jurisdiction of appeals from all final decisions of the district courts. . . ."[6] *See also Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 57 L.Ed.2d 364, 98 S.Ct. 2451 (1978) (refusing appeal under 28 U.S.C.A. §1292(a) (1) which authorizes interlocutory appeals in certain injunction cases).

The questions of the appealability of an order which refuses class status under Rule 23 has not been before this Court. We are not constrained by the federal cases for the simple reason that they turn on an interpretation of the federal appellate jurisdiction statute. 28 U.S.C.A. §1291.[7] Our jurisdiction for appeals is not limited to "final decisions" but contains a number of categories set out in W. Va. Code, 58-5-1.[8]

---

[6] It would appear that *Coopers & Lybrand v. Livesay, supra,* did not totally close the door to appellate review since it stated in footnote 27:

"Several Courts of Appeals have heard appeals from discretionary class determinations pursuant to § 1292(b). See e.g., Lukenas v. Bryce's Mountain Resort, Inc. 538 F2d 594 (CA4 1976); Susman v. Lincoln American Corp. 561 F2d 86 (CA7 1977). See also Samuel v. University of Pittsburgh, 506 F2d 355 (CA3 1974)."

[7] 28 U.S.C.A. §1291 provides:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."

[8] W. Va. Code, 58-5-1, states:

"A party to a controversy in any circuit court may obtain from the supreme court of appeals, or a judge thereof in vacation, an appeal from, or a writ of error or supersedeas to, a judgment, decree or order of such circuit court in the following cases: (a) In civil cases where the matter in controversy, exclusive of cost, is of

We have in the past taken a rather liberal view of when an order is appealable. In *Blackshere v. Blackshere*, 111 W. Va. 213, 161 S.E. 27 (1931), we permitted an appeal from an order granting alimony *pendente lite* on the theory that while it was an interlocutory order "it affects substantial rights as completely as does a decree for permanent alimony." 111 W. Va. at 215, 161 S.E. at 28. *See Slater v. Slater*, 118 W. Va. 645, 191 S.E. 524 (1937). In *Parsons v. McCoy*, 157 W. Va. 183, 202 S.E.2d 632 (1973), we reviewed an order setting aside a default judgment obtained by the plaintiff against several defendants. We even acknowledged that the general rule was to the contrary. An appeal was also permitted where a default judgment was set aside in *McDaniel v. Romano*, 155 W. Va. 875, 190 S.E.2d 8 (1972),

---

greater value or amount than one hundred dollars, wherein there is a final judgment, decree or order;

"(b) In controversies concerning the title or boundaries of land, the probate of a will, or the appointment of a personal representative, guardian, committee or curator;

"(c) Concerning a mill, road, way, ferry or landing;

"(d) Concerning the right of a corporation, county or district to levy tolls or taxes;

"(e) In any case of quo warranto, habeas corpus, mandamus or prohibition;

"(f) In any case involving freedom or the constitutionality of a law;

"(g) In any case in chancery wherein there is a decree or order dissolving or refusing to dissolve an injunction, or requiring money to be paid, or real estate to be sold, or the possession or title of property to be changed, or adjudicating the principles of the cause;

"(h) In any case where there is a judgment or order quashing or abating, or refusing to quash or abate, an attachment;

"(i) In any civil case where there is an order granting a new trial or rehearing, and in such cases an appeal may be taken from the order without waiting for the new trial or rehearing to be had;

"(j) In any criminal case where there has been a conviction in a circuit court or a conviction in an inferior court which has been affirmed in a circuit court.

"Appeals shall not lie under subdivisions (g), (h) and (i) where pecuniary interests only are involved, unless the amount in controversy exclusive of costs, exceeds one hundred dollars."

Other similar provisions to our appellate jurisdiction are found in Article VIII, Section 3 of the West Virginia Constitution and W. Va. Code, 51-1-3.

based on the earlier case of *Clark v. Lee*, 76 W. Va. 144, 85 S.E. 64 (1915).

In *Parsons v. Consolidated Gas Supply Corporation*, 163 W. Va. 464, 256 S.E.2d 758, 761 (1979), we permitted an appeal of an order which granted a default judgment against one of two codefendants. We explained the reason why our case law on the appealability of a default judgment did not follow the federal law standard of finality:

> "Our divergency from the federal rule reflects not so much a difference in philosophy, but is based on the difference between our appellate system and the federal appellate system regarding the right to appeal.
>
> "The right of appeal to a federal circuit court is absolute; under our system, it is not. The consequence of this difference is that we can be less restrictive in interpreting the finality of an order, since upon preliminary review of the application for appeal we may reject it as being without merit."

We recognize, as have other state courts, that the failure to permit the maintenance of a class action by a trial court can have as grave procedural consequences to the parties who are denied class participation as if a final judgment has been rendered against them on the merits. One of the beneficial purposes of a class action is to avoid multiplicity of claims in order to foster judicial economy. The Pennsylvania Supreme Court has aptly identified the consequences of the failure to permit a review of this denial of a class action in *Bell v. Beneficial Consumer Discount Company*, 465 Pa. 225, 231, 348 A.2d 734, 737 (1975):

> "Refusing to allow appeals here would undermine the basic objectives of the class action rule. The judicial process would not achieve the benefits of having matters affecting large numbers of people litigated expeditiously in a single action. By allowing appeals from orders denying class status, individuals with small but meritorious claims will not be turned away without recourse where the action should be characterized as a class action but has not been so designated."

Other state courts allow an appeal from the denial of class action status. *E.g., Reader v. Magma-Superior Copper Co.,* 108 Ariz. 186, 494 P.2d 708, 54 A.L.R.3d 592 (1972); *Daar v. Yellow Cab Co.,* 67 Cal.2d 695, 433 P.2d 732, 63 Cal. Rptr. 724 (1967); *Kohl v. Bay Colony Club Condominium, Inc.,* 385 So.2d 1028 (Fla. App. 1980); *Roemisch v. Mutual of Omaha Insurance Company,* 39 Ohio. St. 2d 119, 314 N.E.2d 386 (1974); *Olive v. Graceland Sales Corporation,* 61 N.J. 182, 293 A.2d 658 (1972). We, therefore, conclude that an order denying class action standing under Rule 23 may be appealed by the party who asserts such class standing.

Our Rule 23 authorizes a class action in three circumstances where the right sought to be enforced is:

"(1) [J]oint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."[9]

---

[9] The complete text of Rule 23(a), West Virginia Rules of Civil Procedure, is:

"(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

These three grounds are summarized in M. Lugar & L. Silverstein, *West Virginia Rules of Civil Procedure* 196 (1960):[10]

> "[T]hose falling under the first subparagraph [are] 'true class suits', that is, ones wherein, but for the class action device, the joinder of all interested persons would be essential. . . . [T]hose covered by the second subparagraph [are] 'hybrid class suits', that is, the ones in which the rights of the members of the class are several, but the joint or common interests are replaced by the property affected by the rights involved in the litigation. Classes falling under the third subparagraph [are called] 'spurious class suits', being a permissive joinder device where the rights sought to be enforced are several, but there is a common question of law or fact affecting the rights *and* a common relief is sought."
>
> (Footnotes Omitted)

Those jurisdictions having a Rule 23 similar to ours generally agree with the foregoing statements. *See e.g., Georgia Investment Co. v. Norman,* 229 Ga. 160, 190 S.E.2d 48 (1972); *English v. Holden Beach Realty Corporation,* 41 N.C. App. 1, 254 S.E.2d 223 (1979); *Valley Utilities, Inc. v. O'Hare,* 89 N.M. 262, 550 P.2d 274 (1976).

The foregoing categories serve to define the type of interests that the persons making up the class must have. In addition, there is the requirement of numerosity which is a finding that the "persons constituting a class are so numerous as to make it impracticable to bring them all before the court, . . ." Rule 23(a), West Virginia Rules of Civil Procedure.

It has been said that the test for "impracticability" of joining all members does not mean "impossibility" but only difficulty or inconvenience of joining all members. See, footnote 7, *Occidental Land, Inc. v. Superior Court,* 18 Cal.3d 355, 556 P.2d 750, 134 Cal. Rptr. 388 (1976); 7 Wright & Miller, *Federal Practice and Procedure: Civil* §1762

---

[10] Lugar & Silverstein's commentary is basically a summary of statements taken from 3B Moore, *Federal Practice* §§23.08 through 23.10 (2d Ed. 1948).

(1969); 35A C.J.S. *Federal Civil Procedure* §§70 and 71 (1960). In addition, it must be shown that the person or persons representing the class will ensure adequate representation of all members. *Spence v. Reeder,* 416 N.E.2d 914 (Mass. 1981); *Royer v. Department of Employment Security,* 118 N.H. 673, 394 A.2d 828 (1978); 7 Wright & Miller, *Federal Practice and Procedure: Civil* §1765 (1969); M. Lugar & L. Silverstein, *West Virginia Rules of Civil Procedure* 194-195 (1960).

In the present case, there is little doubt that a class action was proper. It is asserted that approximately 9000 inmates may be housed in the jail during the course of a year with approximately 150 inmates at any one time. This fact is clearly sufficient to establish numerosity. The jail conditions which are the subject of the lawsuit are applicable to all of the inmates and therefore common questions of law and fact exist and a common relief is sought.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County refusing to accord the appellant class action status is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*