ROSENN, Circuit Judge,
dissenting.
The majority holds that the trustee in bankruptcy may not transfer the estate’s pre-judgment tort claim in the absence of specific federal law preemption. The predicate for its holding is that “the trustee’s rights in the property are limited to only those rights that the debtor possessed pre-petition.” Maj. op. at 493. The debtor in this case, however, never possessed the rights of action in issue. The rights enured only to the trustee because the alleged claims of misappropriation of confidential information, conversion and other torts were committed against the estate after Machine Technology, Inc. (“MTI”) had filed its petition for bankruptcy and while the estate property was in the hands of the trustee. Thus, the tort claims accrued solely to the trustee and their transfer in no way expands or alters the property interest possessed by the debtor when it filed its bankruptcy petition.
Neutralizing the power and duty of the trustee to dispose of these choses of action will deprive the trustee and the creditors of the estate of $100,000 which Integrated Solutions, Inc. (“Integrated”) paid the trustee. If the transfer made by the trustee and approved by the bankruptcy court is invalidated, winding up the estate must be deferred and maximization of benefits to creditors is deferred, all in the face of no prejudice to anyone having an honest interest in the estate and no offense to any specific identifiable interest. I, therefore, respectfully dissent.
I.
MTI filed for Chapter 11 protection on July 22, 1994.' Integrated charges that on August 1 and 2, 1994, the individual defendants, former officers and employees of MTI, removed confidential files, drawings, and schematics from MTI’s office while they were in the possession of the trustee in bankruptcy. Thus, the covert, unauthorized removal violated federal bankruptcy law. On August 3, the bankruptcy judge issued a bench order vacating the automatic stay provision of Section 362 of the Bankruptcy.Code and directing the turnover of the collateral to the secured creditors, including all assets of MTI. The formal order directing this turnover was entered on August 22, 1994. Integrated, engaged in the manufacture, sale and repair service of Photolite lithography equipment, bought the property from the secured creditors on September 6, 1994, for the sum of $800,000. Accordingly, these tort claims, which accrued after the property was in the bankruptcy estate, are subject to federal law. Their assignability should not be subject to the restrictions on assignability of pre-judgment tort claims imposed under arcane and obscure state common law.
One of the primary purposes of the Bankruptcy Code is the expeditious and equitable distribution of the assets of the debtor’s estate. In re Smith-Douglass, Inc., 856 F.2d 12, 15 (4th Cir.1988) (citing Midlantic National Bank v. New Jersey Dep’t of Envtl. Protection, 474 U.S. 494, 508, 106 S.Ct. 755, 763, 88 L.Ed.2d 859 (1986) (Rehnquist, J., dissenting)). Thus, absent a restriction imposed by state law, there would be no problem in the free alienation of these pre-judgment tort claims under federal law. The majority believes that New Jersey’s unexplained common law against the sale or assignment of prejudgment tort claims should apply in this case because the trustee has no greater rights in the property in the estate than the debtor had prior to the filing for bankruptcy.
The tort claims, however, were never the property of the debtor and first appeared in the bankruptcy estate only after the filing of the bankruptcy petition. Thus, the claims are and have always been the sole and exclusive ' property of the trustee. He is duty bound to expeditiously dispose of them, as he must with the rest of the estate property, and that disposition should not be obstructed by an inexplicable state common law rule of inalienation merely because the debtor would have been bound by it. The transfer on its face shows no threat to public health, public safety, the state legal system, or any identifi *497 able harm. On the other hand, “[u]nder the Supremacy Clause of Article VI of the United States Constitution, when enforcement of a state law or regulation would undermine or stand as an obstacle to the accomplishment of the full purposes and objectives of Congress in enacting a federal statute, the conflict must be resolved in favor of the federal law. The overriding purpose of the Code is the expeditious and equitable distribution of assets of the debtor’s estate.” Smith-Douglass, 856 F.2d at 15 (citations omitted).
To facilitate this goal, the court in Smith-Douglass even permitted a trustee to unconditionally abandon a fertilizer plant, which contained violations of state environmental laws and regulations, where the estate lacked unencumbered assets with which to pay for clean-up and the plant itself did not present any imminent health or safety risks to the public. Id. at 16; accord New Jersey Dep’t of Envtl. Protection v. North Am. Prods. Acquisition Corp., 137 B.R. 8 (D.N.J.1992). In this case, the transfer of the tort claims pales into insignificance in offending state law. Although recognizing that preemption by the Supremacy Clause is a matter of congressional interest, Hines v. Davidowitz, 312 U.S. 52, 66-67, 61 S.Ct. 399, 403-04, 85 L.Ed. 581 (1941), the Court did not suggest that an impractical obtuse “disruption of effectual administration of bankrupt estates under the Code was appropriate.” Smith-Douglass, 856 F.2d at 16. “It is clear that if an identifiable federal interest is present and overriding, then recognition of a restriction to liquidate by agreement or state law must fail.” In re Baquet, 61 B.R. 495, 500 (Bankr.D.Mont.1986).
A bankruptcy trustee, accorded the duty of managing the property in the estate and disposing of the assets, has a clear interest in protecting that property from misappropriation; otherwise the property loses value and diminishes the money that can be brought into the estate through the liquidation of assets to satisfy the creditors. This interest is even greater when the tortious conduct is committed against the property while it is in the bankruptcy estate, as opposed to pre-petition tort claims. It is analogous to certain crimes which become federal crimes only because they occurred on federal property. Although there may be no difference in the conduct itself, an assault which takes place on federal land (such as a national park) will be subject to federal law while one which occurs on any other property will be governed by state law. The federal interest is paramount because the act has been committed against property under the control of the federal government.
Moreover, the cases relied on by the majority for the proposition that state law restrictions imposed on the assignability are distinguishable. None of those cases involved tortious conduct committed . against the debtor’s property after it was part of the bankruptcy estate and in federal custody. In those cases, the estate property subject to the restrictions on alienability belonged to the debtor prior to the bankruptcy.
One of the principal cases relied upon by the majority is In re Schauer, 835 F.2d 1222 (8th Cir.1987), which I believe is clearly inap-posite. In Schauer, there was an attempt “to expand or change a debtor’s interest in property merely because it filed a bankruptcy petition.” Maj. op. at 494. There, the question was whether the trustee could transfer patronage margin certificates of a farm cooperative without the cooperative’s approval. The patronage margin certificates are evidence of the ownership and interest in the cooperative and in the patron’s revolving fund. Schauer, 835 F.2d at 1223. The cooperative’s by-laws provided for redemption and barred any assignment of interest in the revolving fund without the consent of the board of directors. Id. at 1223-34. The trustee for the Schauers, who had filed for bankruptcy, requested the board of directors of the cooperative to consent to the assignment of the certificates to third parties, but the board refused in accordance with its standard business practice. Id. at 1224. The trustee sought the aid of the court to compel the transfer, but the court correctly held that the trustee acquired the certificates subject to the cooperative’s by-laws and could not transfer or assign them without the consent of its board of directors. Id. at 1225. In the instant matter, however, the tort claims were never the property of the debtor *498 and, of course, were never the subject of contractual limitations as in Schauer. Thus, the rule that the trustee succeeds only to the title and rights in property that the debtor had at the time he or she filed the bankruptcy petition, see In re Sanders, 969 F.2d 591, 593 (7th Cir.1992), has no relevance here.
Furthermore, no compelling rationale exists for preventing the sale or assignment in this case. On the contrary, the estate and all interested parties would be best served by allowing the transfer of the claims, as the bankruptcy court did, to Integrated. The sale of the tangible assets of the bankrupt estate could be seriously hindered if the purchaser cannot acquire the accompanying tort claims upon which the full value of the property may depend. For example, in the present situation, it is unlikely that Integrated would have purchased the tangible property in question if they knew that they would lack standing to retrieve the confidential files, drawings and schematics misappropriated by the tortfeasors or to obtain damages. Thus, barring the transfer of the tort claims can in certain situations have the destructive effect of also obstructing the sale of the assets in the estate, in contradiction to the overriding purpose of the Bankruptcy Code.
The majority expresses a concern that allowing the sale and transfer of a pre-judgment tort claim is “untenable” in case of Chapter 11 reorganizations where the debtor remains in possession of the estate property. Maj. op. at 493-94. This is a needless fear. So long as the debtor remains in possession, it bears essentially the same fiduciary obligation to the creditors as does the trustee for the debtor out of possession. “Moreover, the duties which the ... Debtor in possession must perform during the proceeding are substantially those imposed upon the Trustee, § 188.” Wolf v. Weinstein, 372 U.S. 633, 649, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1962); accord Matter of Ribs-R-Us, 828 F.2d 199, 203 (3d Cir.1987). If property of the debtor is wrongfully removed or stolen by a third party, recovery by the debtor’s estate as in the case of property in the hands of a trustee, poses no harm to anyone except to the tortfeasor.
The majority’s concern that permitting debtors-in-possession to freely assign prejudgment tort claims “in violation of state laws restricting the transfer of such claims -... is tantamount to expanding the pre-petition rights of the debtor in the property of the estate,” maj. op. at 495, is more imaginary • than real. First, transfers are not made wide and loose but only for a valuable consideration to the bankrupt estate, and, as in this case, with the approval of the court. 11 U.S.C. § 363(b)(1). Moreover, the situation here is one where the estate itself has been deliberately injured by dishonest tort-feasors. Second, the transfer is not made in violation of any state legislative enactment; under the harshest interpretation, the assignment may superficially conflict with an obscure judicial concept. Third, the transfer neither offends nor alters the property interest of any. party. As in the case of the trustee, the right to transfer tort claims committed against the debtor-in-possession facilitates its reorganization and expeditiously maximizes the estate for the benefit of creditors.
The defendants do not offer a sufficient answer when they assert the trustee may litigate the tort claim. This presupposes that the trustee has, the funds to carry on the litigation, and appeals if necessary, and that the purchaser of the tangible assets is willing to stand by and wait. Moreover, if the trustee cannot transfer the claims, insufficient resources may compel him to abandon the claim rather than litigate it and thus diminish the value of the bankruptcy estate left for the creditors. Accordingly, common sense, fairness, and pragmatism dictate that the trustee be permitted to sell and transfer the pre-judgment tort claim and settle the estate as speedily as possible.
n.
Given the very specific facts of the present situation, in which the alleged tort occurred while the debtor’s property was in the custody of the federal bankruptcy trustee, federal law governs the alienability of the property. The trustee may not be subjected to the state common law restrictions prohibiting the assignment of pre-judgment tort claims. *499 Therefore, I would vacate the order of the district court granting Service Specialties’ motion for summary judgment and remand for further proceedings consistent with this opinion.